Terah B. Thomas *vs.* Johnnie Mae Thomas.

JUNE 29, 1955.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a husband's petition for divorce. It charges the wife with several of the statutory causes for divorce including that of adultery. At the hearing on the merits in the superior court the evidence established the latter cause beyond dispute. However, the trial justice denied and dismissed the petition on the ground that petitioner was guilty of gross misbehavior. The case is here on his exception to such decision.

The petitioner contends that the evidence does not prove gross misbehavior as that cause for divorce in our statute has been construed and applied by this court. Hence, he argues, the trial justice erred in denying the petition on that ground. On the other hand, respondent contends there is substantial evidence to support the decision and therefore it should not be disturbed. To resolve these conflicting contentions we must examine the transcript. And it will also be necessary to consider what is comprehended by the term gross misbehavior as a cause for divorce under our statute.

Omitting minor details and some inconsequential matters upon which the witnesses were not in agreement, the important facts are briefly these. The petitioner Terah B. Thomas was married to Johnnie Mae Thomas July 6, 1941. Until sometime in the latter part of 1949 they appeared to have enjoyed a normal married life. Five children were born of their union. The petitioner, who was a metalsmith earning good wages, worked steadily and was a good provider for his family. Their marital peace was suddenly shattered one night in December 1949 when a bitter altercation occurred between them in their home in Providence. According to petitioner, his wife threatened to kill him with a butcher knife. The transcript is silent as to what provoked this dissension in the first place. Suffice it to say that it was necessary to call the police to restore peace.

As a result of the altercation the parties did not live together as husband and wife after that night, and on

January 8, 1950 petitioner was compelled, in fear of his life as he testified, to leave the house and take up his abode elsewhere. Later in September of that year as an army reservist he was called back into service. While there he made a monthly allotment of $156 for the support of his wife and family. Finally in December 1951 he was sent to Korea and did not return to this country until January 1953.

While petitioner was in Korea it appears that respondent committed adultery and as a result a child was born to her on October 23, 1952. The birth of this child was registered in the records of births in the city of Providence under the name of Cheryl Ann, father unknown. The respondent took this child into her home and cared for her as one of petitioner's family. There is some testimony by petitioner that, at the time she threatened him with the butcher knife and told him she did not want him in the house any more, his wife was interested in a man whose first name was Charles. He did not learn this man's full name until later and did not know of her adultery until she informed him by letter, while he was in Korea, of the birth of Cheryl Ann.

It further appears from the evidence that sometime in 1949 or early in 1950 petitioner became acquainted with a certain woman and on a few occasions visited her apartment. He testified that he did so to call on her brother who was a friend. He denied that he associated immorally with her. She testified for respondent that petitioner had gone to the movies with her, had taken her to dinner, and had visited the apartment where she lived with her brother. She also testified that he had never behaved improperly in his association with her and that he had always acted as a gentleman should.

On this testimony the trial justice found that petitioner, while he was separated from his wife, was guilty of association with one who was shown to be an unmarried mother, and that this fact alone furnished proof of "gross misbehavior" so as to preclude him from obtaining a divorce.

It is the controversy over that finding which constitutes the crux of this case.

It is contended by respondent that a husband cannot be granted a divorce if he is guilty of any offense which in itself is a cause of divorce under our statute. *Church* v. *Church,* 16 R. I. 667. Gross misbehavior, or rather "gross misbehavior and wickedness, in either of the parties, repugnant to and in violation of the marriage covenant" is such an offense. General laws 1938, chapter 416, §2. In the instant case we assume that the trial justice was referring thereto when he used the shorter term "gross misbehavior" as preventing petitioner from obtaining a divorce on the evidence here.

In *Stevens* v. *Stevens,* 8 R. I. 557, 560, this court declared: "* * * that no act or series of acts can constitute a ground of divorce under the clause, unless such act or series of acts unites two distinct moral elements or qualities: that is to say—it must be of such a character as, in the first place to amount to gross misbehavior and wickedness, and, in the second place, to be repugnant to and in violation of the marriage contract. There are consequently many kinds of gross misbehavior and wickedness which are not, under the clause, grounds of divorce." And after giving certain illustrations the court went on to say that "there are doubtless many violations of marital duty, and many modes of conduct, repugnant to and in violation of the marriage contract, which are nevertheless not sufficient as grounds of divorce, for the reason that they do not take, in the statutory sense, the form of gross misbehavior and wickedness. The statute under the clause which we are considering, authorizes a divorce only where there is a concurrence of both elements."

Therefore unless it was shown expressly or by reasonable inference that the petitioner's association with another woman had "some character of licentiousness * * * allying it in its moral attributes with adultery" it cannot be deemed

gross misbehavior and wickedness. *Jackson* v. *Jackson,* 70 R. I. 333; *Farnell* v. *Farnell,* 60 R. I. 439. In our opinion the evidence in the case at bar discloses no concurrence of the elements above set out in the *Stevens* case. Hence in the circumstances the trial justice's finding that petitioner was guilty of such gross misbehavior is clearly. wrong.

On the other hand if he meant that the divorce was being denied because petitioner had not established affirmatively that he was free from fault or that he had not come into court with clean hands, the answer on this record is that the evidence does not support that conclusion. It is true that petitioner should not be granted affirmative relief unless he has been faithful to the marriage covenant. *Mahoney* v. *Mahoney,* 76 R. I. 40; *Comery* v. *Comery,* 76 R. I. 191; *Gardella* v. *Gardella,* 66 R. I. 382; *Scullin* v. *Scullin,* 65 R. I. 91; *Hakonson* v. *Hakonson,* 64 R. I. 276; *Grimes* v. *Grimes,* 61 R. I. 198; *Standish* v. *Standish,* 48 R. I. 179; *McLaughlin* v. *McLaughlin,* 44 R. I. 429; *Hurvitz* v. *Hurvitz,* 44 R. I. 478.

However, in the instant case there is no evidence of petitioner's association with the other woman under such circumstances of time and place or other fact that would reasonably warrant an inference that it amounted to a relationship in its nature akin to licentiousness or that it was anything more than a friendly association as testified to by the other woman. In fact when she was called to the witness stand by respondent and questioned about her association with petitioner, respondent's attorney explained to her that in using the word "associate" in his question he did not intend to imply thereby any wrongful conduct. With that understanding she readily testified she had associated with petitioner on a number of occasions. Therefore in the absence of a finding by the trial justice against her credibility or any other finding disclosing the basis upon which he rested the conclusion that such association amounted to gross misbehavior or unfaithfulness to the

marriage covenant, we must assume that the character of such association was as she testified. As far as the petitioner is concerned, that association was perhaps indiscreet and possibly open to some suspicion but, in our opinion, in the circumstances of record it was not evidence of such unfaithful conduct as would warrant the denial of his petition.

The petitioner's exception is sustained, and the respondent may appear before this court on July 6, 1955 to show cause, if any she has, why the case should not be remitted to the superior court with direction to grant the petition for divorce on the ground of adultery.

*Aaron Rickles,* for petitioner.

*Thomas W. Pearlman,* for respondent.